J. G. ROACH ET AL. *v.* W. J. BRANNON.

1. GROUNDS FOR ATTACHMENT. *Debtor's undervaluation of his assets.*
   No clause in the statute (Code 1871, § 1420), which specifies the grounds for attachment, makes an undervaluation of his property by a debtor who is seeking a compromise with his creditors a cause for its issuance.

2. SAME.	*Concealment of assets and refusal to pay.*

The ground that he has property, which he conceals and unjustly re-
fuses to apply to his debts, is not sustained by proof that he offered
a creditor only twenty-five cents on the dollar when his assets equalled
half his debts, and stated that if his offers were rejected his creditors
would get nothing.

3. SAME.	*Surviving partner.	Changing the form of assets.*

A surviving partner's investment of part of the firm assets in a retail
liquor license is no ground for attachment, if he owes no individual
debts and intends to sell out the stock, consisting entirely of liquor,
at retail, in order to realize more for the firm creditors.

4. SAME.	*Charitable donations.	Yellow-fever epidemic.*

He does not subject himself to attachment by allowing to the family
of his deceased partner support out of the firm assets for a few weeks
after an epidemic of yellow fever and while he is winding up the
business.

5. SAME.	*Burden of proof.	Estoppel.*

The plaintiff in attachment must establish the truth of the facts averred
in his affidavit, except where such averments are made in reliance on
the defendant's language or conduct, so that he is estopped from
showing the contrary.	*Cocke v. Kuykendall*, 41 Miss. 65, explained.

6. SAME.	*Estoppel by conduct.	Constituents.*

To constitute such estoppel, the language or conduct must be such as
to have warranted the averments of the affidavit, the affiant must
have believed them to be true, and have been led to that belief by the
acts or declarations of the debtor.

7. SAME.	*Fraud in law and in fact.*

Fraud in fact or in law constitutes ground for attachment; and al-
though its existence must be established by the plaintiff, the jury
should sustain the writ if they believe from the facts, notwithstanding
the defendant's denials, that the intent existed, or the necessary con-
sequence of the act was to defraud creditors.

8. ATTACHMENT AGAINST SURVIVING PARTNER.	*Grounds therefor.*

An attachment can be sued out by a firm creditor against the surviving
partner and levied on the assets of the partnership, but such creditor
must aver and prove one of the specific grounds for attachment enu-
merated in the statute.

9. SAME.	*Distinction between individual and firm creditors.*

*Semble*, that circumstances may exist which will justify the issuance of
an attachment by a firm creditor against the partnership assets in the
hands of a surviving partner, although his individual creditors cannot
sustain one on the same facts.

10. SAME.	*Unfair preference among creditors.*

*Semble*, that the application by a surviving partner of firm assets to his

individual debts is a violation of the clause of the statute which forbids an unfair preference among creditors.

11. PARTNERSHIP. *Dissolution by death. Payment of creditors.*
The surviving partner is not bound to distribute the partnership assets ratably among the firm creditors, but may pay one in full to the exclusion of the others.

12. SAME. *Creditor's bill. Chancery jurisdiction.*
A general creditor of a firm, who has no lien, cannot maintain a bill in chancery against the surviving partner to subject the partnership assets. *Freeman* v. *Stewart*, 41 Miss. 138 ; *Schmidlapp* v. *Currie*, 55 Miss. 597, cited.

13. WRONGFUL ATTACHMENT. *Measure of damages. Compensatory only.*
Damages for the wrongful issuance of an attachment under the statute must be compensatory only.

14. SAME. *Elements to be taken into account.*
The elements of damages defined by Code 1871, § 1462, consisting of lawyers' fees, travelling expenses, hotel bills, loss of trade, and special injury to business, are exclusive of all others.

15. SAME. *Loss of trade. Surviving partner.*
If the writ is levied on the firm assets in the hands of a surviving partner, who is winding up the business, no loss of trade can be estimated.

16. SAME. *Injury to credit. Insolvency.*
There can be no injury to credit if both the survivor and the firm are hopelessly insolvent.

17. SAME. *Lawyers' fees. None for cross-action.*
Lawyers' fees can be allowed only for defending the attachment suit, exclusive of the cross-action for damages.

18. SAME. *Number of lawyers employed.*
Fees can be allowed for one firm of lawyers only, unless the jury are satisfied by the evidence that the necessities of the case required more.

ERROR to the Circuit Court of Marshall County.

Hon. J. W. C. WATSON, Judge, did not preside in this case, but Hon. A. M. CLAYTON acted as judge *pro hac vice.*

*Watson & Smith*, for the plaintiffs in error.

1. If either of the grounds of attachment set out in the affidavit were true, or the plaintiffs had reasonable cause so to believe, the verdict for the defendant on the plea in abatement is erroneous. The surviving partner was violating his duty by trading with the firm assets and not applying them to the partnership debts. Story Part. §§ 328, 329, 331, 343 ; *Mayson* v. *Beazley*, 27 Miss. 106 ; *Stewart* v. *Burkhalter*, 28 Miss. 396 ; *Bank of*

*Port Gibson* v. *Baugh*, 9 S. & M. 290; *Williams* v. *Gage*, 49 Miss. 777. He had applied for license to continue the business, and was supporting the family of the deceased partner out of the partnership stock. *Sykes* v. *Sykes*, 49 Miss. 190; *Gaines* v. *Coney*, 51 Miss. 323; *Robertshaw* v. *Hanway*, 52 Miss. 713; *Bank* v. *Carrollton Railroad*, 11 Wall. 624. He was thus converting the assets of the firm into cash, for the purpose of meeting liabilities accruing after the co-partner's death. These were his individual debts, and to apply the firm assets to pay his own debts is itself a fraud on the firm creditors and ground for attachment. He informed the plaintiffs that if they did not accept the propositions which he had made them, they would never get anything, which was sufficient to warrant the attachment. *Livermore* v. *Rhodes*, 27 How. Pr. 506; Drake on Attachment, § 95. A debtor has no right to coerce a creditor into a bad compromise. *Hyslop* v. *Clarke*, 14 Johns. 458; *Austin* v. *Bell*, 20 Johns. 442; *Wakeman* v. *Grover*, 4 Paige, 23. This debtor, when he knew the value of his stock, misrepresented it to the plaintiffs, in order to force them into a settlement at twenty-five cents on the dollar. He also paid off certain firm creditors to the exclusion of others, and generally misapplied the assets, and was guilty of fraud in fact. But if his conduct was such as to delay creditors, it was fraudulent in law, and the attachment was rightfully sued out, however honest his intentions were. Opposing counsel err in contending that it is necessary to prove intentional fraud.

2. The defendant was estopped to deny the truth of the affidavit, because it was based upon his statements, made shortly before the writ was sued out. If the plaintiffs had reasonable ground to believe, from the defendant's conduct and language, the facts averred in the affidavit, the attachment was rightly sued out. The issue to be tried by the jury is, whether the attachment was wrongfully sued out, and not whether the facts stated in the affidavit are true or false. It was held in *Cocke* v. *Kuykendall*, 41 Miss. 65, that although the jury may believe that the facts stated in the affidavit are actually untrue, yet if they further believe that the statements of the defendant himself afforded the plaintiffs reasonable ground to believe

the affidavit true, they must sustain the writ. The doctrine of that case has never been departed from, but is expressly affirmed in *Morgan* v. *Nunes*, 54 Miss. 308.

3. The objection that the attachment will not lie against a surviving partner is without foundation. *Barcroft* v. *Snodgrass*, 1 Cold. 430. The firm creditors are without remedy in equity (*Stewart* v. *Freeman*, 41 Miss. 138), and, unless they can sue the survivor at law, they have no means of collecting their debts. Suits at law, judgments and executions against surviving partners are, however, of daily occurrence. What, then, is the objection to an attachment? If the estate is insolvent, and the surviving partner desires distribution *pro rata*, he has his remedy in equity, of which, however, the creditors of the firm cannot avail. As the debtor was applying the assets fraudulently to his private purposes, and was endeavoring to force the firm creditors into an unjust compromise, in which he succeeded in some cases, the attachment was the appropriate remedy.

4. The damages were excessive, and wholly unwarranted by the testimony. The only proper item of damage sustained by the defendant by reason of the seizure was the difference between the actual value of his goods and what they brought at sheriff's sale. He could not recover for loss of trade, for he had no right to do business with the partnership assets. This was no case for exemplary damages. If a large number of lawyers are employed by the defendant to defeat the plaintiffs, they cannot all claim fees. Should that rule prevail, some fraudulent debtor will next employ the entire bar of the State at his creditors' expense. The damages must be compensatory only, and confined exclusively to the items enumerated in the statute. If debtors can grow rich at the expense of attaching creditors, this law will prove a snare to the innocent, and an encouragement to the guilty to persist in fraudulent practises. An insolvent debtor risks nothing, and has the chance, if he can escape detection, to extinguish the debt and recover a balance. The rule allowing exemplary damages is contrary to the statute, and an encouragement to fraud.

*J. H. Watson*, on the same side, made an oral argument.

*Orlando Davis*, for the defendant in error.

1. The verdict is right. It is sustained by the evidence, and will not be disturbed upon the ground of errors of law committed at the trial, or in the charges. This has been held, in all the various aspects in which the question was presented, in the following cases: *Hill* v. *Calvin*, 4 How. 231; *Pritchard* v. *Myers*, 11 S. & M. 169; *Wiggins* v. *McGimpsey*, 13 S. & M. 532; *Simpson* v. *Bowdon*, 23 Miss. 524; *Holloway* v. *Armstrong*, 30 Miss. 504; *Corbin* v. *Cannon*, 31 Miss. 570; *Hanna* v. *Renfro*, 32 Miss. 125; *Fore* v. *Williams*, 35 Miss. 533; *Cameron* v. *Watson*, 40 Miss. 191; *Hanks* v. *Neal*, 44 Miss. 212; *Memphis Railroad Co.* v. *Whitfield*, 44 Miss. 466; *Tush-ho-yo-tubby* v. *Barr*, 45 Miss. 189; *New Orleans Railroad Co.* v. *Field*, 46 Miss. 573; *Garrard* v. *State*, 50 Miss. 147; *Germania Ins. Co.* v. *Francis*, 52 Miss. 457; *O'Leary* v. *Burns*, 53 Miss. 171; *Graham* v. *Fitts*, 53 Miss. 307; *Duff* v. *Snider*, 54 Miss. 245; *Rothschild* v. *Hatch*, 54 Miss. 554. Neither of the grounds of attachment laid in the affidavit can be sustained without proof of intentional fraud amounting to moral turpitude. There is no evidence tending to sustain such a theory.

2. Surviving partners are trustees for all concerned in the partnership, for the representatives of the deceased, for the creditors, and for themselves. Parsons Part. 441, 442; *Case* v. *Abeel*, 1 Paige, 393. They may collect, compromise, or otherwise arrange all the debts of the firm. And their doings generally in this behalf are valid, if honest, and within the fair scope and purpose of the trust. And if there be negligence, delay, misconduct, or gross mistake, equity will interfere and give the proper relief. Parsons Part. 442. This, and not the writ of attachment, is the remedy provided by law for misconduct of surviving partners. To hold otherwise would be to establish a new ground of attachment besides those given in the statute. A surviving partner being a trustee, a court of equity, and not a court of law, is the proper forum in which to enforce remedies against him. 1 Story Eq. Jur. § 29; 2 Perry on Trusts, §§ 816–818; Bigelow on Fraud, 244; *May* v. *Le Claire*, 11 Wall. 217, 236. If to this it is replied, that here the defendant in error is personally liable for the debt, and therefore personally liable to attachment, such position is wholly untenable, because the suit is brought against the

defendant as surviving partner, and not in his private or individual capacity. This court has given the true construction of our attachment laws in the case of *Myers* v. *Farrell*, 47 Miss. 281, 284, where it says: "A leading purpose of the attachment laws, beginning with the amendment of 1844, is to secure to the creditor a remedy against the dishonest and fraudulent debtor." The grounds of attachment laid in this case, in their legal effect, charge dishonesty and fraud. The defendant being, as is shown, a trustee, the most that the evidence shows against him is, that he may, in some minor matters, have acted on a mistaken view of his rights, powers, and duties as such trustee.

3. The case of *Cocke* v. *Kuykendall*, 41 Miss. 65, is relied on by plaintiffs in their brief. The only principle decided in that case was, that the defendant was estopped by certain statements made by him to the plaintiff, upon which the plaintiff acted, and which afterwards proved to be false. So of the case of *Morgan* v. *Nunes*, 54 Miss. 308, affirming it. Both cases turned upon the estoppel, which does not arise in this case. No statement is shown to have been made by Brannon, moving the plaintiffs to act, which has turned out to be false. The plaintiffs in error rely upon the testimony of a witness, that Brannon told him that if the plaintiffs did not take certain amounts they would get nothing. This is denied by Brannon in his testimony, positively, who says he told the witness that if they would not take such as he had, they could get nothing. The jury have settled the conflict.

*Arthur Fant*, on the same side, argued the case orally.

CHALMERS, J., delivered the opinion of the court.

The plaintiffs in error, who were also plaintiffs in the court below, sued out this writ of attachment against the defendant, who was surviving partner of W. J. Marett & Co., in a retail liquor saloon in the town of Holly Springs. The affidavit for the writ was based upon the grounds that the defendant had property, or rights in action, which he was concealing, and refused to apply to the payment of his debts, and that he had assigned or disposed of, or was about to assign or dispose of, his property, or rights in action, or some part thereof, with

intent to defraud his creditors, or give an unfair preference to some of them, and that he had converted, or was about to convert, his property into money, or evidences of debt, with intent to place it beyond the reach of his creditors. The facts proved upon the trial, in support of the averments of the affidavit, were these: The defendant had written to the plaintiffs, asking for a composition of their demand, stating the impossibility of paying the debt due by his firm in full, and giving the value of the stock on hand as between twelve hundred and fourteen hundred dollars. The truth was that an invoice, taken by him the day before this letter was written, showed the prime cost of the stock on hand to be fourteen hundred and eighty-seven dollars. When called upon by the attorney of the plaintiffs to know how much he could or would pay, he refused to offer more than twenty-five cents on the dollar, though the firm assets would perhaps have paid fifty cents on the dollar; and he stated to the plaintiffs' attorney that, if he rejected this proposition, and also refused to receive certain claims, which he offered to transfer in liquidation of the plaintiffs' demand, his clients would never get a cent. This last statement is denied by him. He had applied to the corporate authorities of the town for a license to carry on in his own name the retail liquor business for a year, and confessed that he expected to pay for the privilege, the price of which was five hundred dollars, out of the receipts realized from daily sales of the firm's stock on hand. He had permitted the widow and family of his deceased partner to live in part, for a period of a month, out of the receipts of the firm's business accruing after the death of his partner. These are the facts which, it is claimed, authorized the issuance of the writ.

If we leave out of view the facts that the defendant was the surviving partner of an insolvent firm, that he was dealing with firm assets, and that the plaintiffs were firm creditors, and if we regard him as a private individual, negotiating with an individual creditor in relation to his own property, it is impossible to see that any of these facts come up to the allegations of the affidavit or the requirements of the statute. The letter written to the plaintiffs underestimated the value

of the goods on hand, if we accept the prime cost as the crite-
rion of their value ; but we know that it frequently happens
that a remnant of a stock of goods fails to bring first cost, and
even if we treat the letter as an intentional underestimate,
there is no clause in the statute which makes an undervalua-
tion of his property by a debtor, who is seeking a compromise
with his creditors, a ground of attachment.   It is shown that
the goods were freely exhibited, after this letter was written,
and before the attachment, to a clerk of the plaintiffs, who
examined them, and expressed the opinion that they would not
sell for more than half the invoice price.   That he only
offered to pay twenty-five cents on the dollar, when the assets
were probably worth fifty, and that he stated, if he did so
state, that the plaintiffs' refusal to accept this, and their rejec-
tion of the proffered transfer of claims, would result in their
getting nothing, does not come up to the allegation of the affi-
davit that he had property which he " concealed, and unjustly
refused to apply to the payment of his debts."   There must
be both a concealment and a refusal to apply, and this
implies an affirmative act of concealing, as well as a nega-
tive omission to pay.   There was no secreting of anything,
and we cannot predicate concealment of a mere failure to pay,
though the debtor has ready money, and that money is not
visible to the creditor.   Money is never visible ordinarily, and
so long as there is no attempt to secrete it, by clandestine
removal or fictitious transfers or otherwise, and so long as it
is kept and used as money ordinarily is, no ground of attach-
ment is afforded.   That he intended to re-embark in his own
name in the business of a liquor dealer, and proposed to invest
five hundred dollars in a license for that purpose, constituted
no ground of attachment, though it was to be accomplished by
a transmutation of property into money, and an investment of
the latter in the license.   A creditor cannot require his debtor
to preserve the status of his estate, nor complain that he is
about to change from one lawful pursuit to another.   It
might be that the investment of all his means in an invisible,
intangible thing, like a liquor license, which has no practical
pecuniary value, because neither transferable nor vendible
under execution, would constitute ground of attachment, if

the purpose was simply to procure the license without avail-
ing of it.   But where the purpose is to embark in an enter-
prise, all the materials and visible stock of which can be
reached by the creditor, it amounts to nothing more than
engaging in a new branch of business, and constitutes no
ground of attachment.   In this case, the debtor testified
that his intention in procuring the license was to sell out
the stock of liquors at retail, they being far more valuable in
that way, and he being advised that he could not do this
under the old license possessed by the firm.   His object was
to make the assets realize a larger fund for the firm creditors.
Regarding him as dealing with his individual property, — and
it is solely in this view that we are now considering the case, —
it is quite evident that he did not subject himself to attach-
ment by allowing the family of his deceased partner to be sup-
ported from the proceeds of the firm business.   If the estate
of the deceased partner was entitled to anything, his family
was receiving only their just dues ; and, if they were not, it
amounted simply to a gratuity on the part of the defendant.
However improper it may be for an insolvent person to give
in charity that which he should appropriate to the payment of
his debts, the fact that he does so has not been made in this
State a ground of attachment.

But the defendant was not negotiating with an individual
creditor, nor dealing with individual property.   He was the
surviving partner of an insolvent firm, and the plaintiffs were
creditors of that firm.   Two questions are presented by these
facts : (1) Can an attachment be sued out against a surviving
partner by a firm creditor?   (2) If so, must such creditor
bring himself within the letter of the attachment statutes and
maintain his writ by showing a state of facts which would
warrant an individual creditor in suing out the writ, or is it
sufficient for him to show that the surviving partner has been
faithless to the trust with which the law clothes him for the
benefit of firm creditors, and has been guilty of conduct
which the law regards as fraudulent, as to them, though
admissible as to those to whom he is individually indebted?

We have no hesitation in answering the first question in the
affirmative.   We see no reason why an attachment may not be

sued out by a firm creditor against a surviving partner, and levied on the firm assets. The two objections urged against it — to wit, that it will destroy that equal distribution of the assets among the firm creditors, which the law requires, and that the appropriate remedy is in equity — rest upon false assumptions of law. A court of equity has no jurisdiction to entertain a suit brought by a firm creditor at large against a partnership, whether it be an existing one or one that has ceased by limitation or by the withdrawal or death of one of the partners. Firm creditors have no lien upon firm assets, nor any original right to require an application of them to their demands. The several partners have a right so to require, as among themselves, and it is solely because of this right that creditors are by subrogation accorded the same privilege when the courts come to wind up the business and distribute the funds. *Schmidlapp* v. *Currie*, 55 Miss. 597. But the creditor who has neither a lien nor a judgment has no *locus standi* in a court of chancery, nor any excuse for invoking its interference, and this is as true of the creditors of a partnership as of those of an individual. *Freeman* v. *Stewart*, 41 Miss. 138; *Case* v. *Beauregard*, 99 U. S. 119. Neither is it true that a surviving partner must distribute the assets of the firm ratably among the creditors; nor do the courts undertake to accomplish such a result, except where the distribution falls into their hands. The surviving partner may pay them in such amounts and in such order as he pleases, and may appropriate the whole assets to any one of them if he elects so to do. *Scott* v. *Tupper*, 8 S. & M. 280 ; *Bank of Port Gibson* v. *Baugh*, 9 S. & M. 290. He is the legal owner of the entire assets; and a firm creditor who has received nothing has no more right to complain that some other *bona fide* firm creditor has been paid in full, than the individual creditor of an ordinary person would have under the same circumstances. Any creditor is at liberty to bring suit at once against the surviving partner, and, by judgment and execution, seize and sell the entire assets. Why should he not be at equal liberty to accomplish the same result by attachment, since it is well settled that all property which is vendible under execution is subject to attachment?

Drake on Attachment, § 244. This consideration of itself demonstrates the fallacy of the proposition that attachment cannot be maintained against a surviving partner, for the reason that it breaks up an equal distribution of the assets. That the same result would be accomplished by a seizure under execution is undeniable, and that such seizure is admissible is undoubted. The fundamental error is in the assumption that the law undertakes to ensure an equal distribution, except where the administration is intrusted to the courts.

If, then, a firm creditor may sue out and levy an attachment upon firm assets in the hands of a surviving partner, upon what grounds must he proceed? Must he aver and prove one of the specific grounds of attachment laid down in the statute, or will it be sufficient to show that the surviving partner is acting in violation of that *quasi* trust imposed upon him by law for the benefit of·firm creditors? We have no hesitation in saying that he must bring his case strictly within the letter of the statute. An attachment is with us an extraordinary remedy, and in some respects a harsh one. The circumstances which justify it are carefully and accurately defined by the lawgiver, and no exceptions or additions can be engrafted upon it by the courts. It may well be, however, that circumstances may exist which will warrant a particular creditor in resorting to the remedy when other creditors could not do so, as where the acts committed by the debtor were legally fraudulent as to him, though not so as to others. Thus one who had extended credit after the commission of the alleged fraudulent act would not be warranted in suing out an attachment on account of it, though pre-existing creditors might do so. So, too, cases may arise where the acts of a surviving partner would be fraudulent as to firm creditors, though not so as to his individual creditors, and the former would have a right to the writ of attachment, where the latter would not. An application of firm assets to his individual debts would probably be regarded as a violation of that clause of the statute which forbids an unfair preference among creditors, though as this record does not present that question, we express no decided opinion upon it; and the declaration that circumstances may exist which

would justify the issuance of an attachment by a firm creditor against a surviving partner, though the same right would not exist for his individual creditors, must also be accepted as lacking that authority to which it would be entitled if the facts of the case before us called for an application of the doctrine.

We are unable to see anything in the present case which warranted the attachment at the instance of either class of creditors. There are only two acts of the debtor which can admit of any doubt on this point, to wit, the temporary support of the family of the deceased partner from the proceeds of the firm business, and the proposed obtaining by himself of a license to carry on the business. The deceased partner died during the epidemic of yellow fever, by which the town of Holly Springs was ravaged in the summer and autumn of 1878. During its prevalence all business was suspended. The saloon of the firm was reopened after the cessation of the fever, on November 11. The attachment was sued out on December 20. During the few weeks that intervened, the family of the deceased partner was partly supported from the proceeds of the business. If the surviving partner's own family had been so supported, would it have afforded grounds of attachment? If, while both partners were alive, their families had been so supported, or if there had been two surviving partners after the death of a third, and the family of each had drawn from the firm business a temporary support in limited quantities, would this have afforded ground of attachment? We cannot think so. The clauses of our attachment laws under consideration are based upon the idea that the debtor has committed some act which is fraudulent in intent or fraudulent *per se* in law; that is to say, the party committing it must have an actual intent to defraud his creditors, or the necessary consequences of his act must be to defraud them. There was, we think, an absence of the actual intent here, and though the abstraction of any portion of the assets operated *pro tanto* to diminish the fund for the payment of creditors, we are not prepared to say that the support of a man's family out of his estate, whether he be a surviving partner or an ordinary individual, constitutes *per se* such fraud in law as subjects the party to attachment. Neither are we, under the circumstances

of this case, prepared to say that an attachment was author-
ized by the withdrawal of the amounts allowed to be abstracted
by the widow of the deceased partner. Each case in this
regard must be allowed to stand upon its own facts, and we
decide only the case before us.

The defendant confessed that he expected to pay for the
retail license, for which he had applied, out of the proceeds of
the business, but stated that he made the application because
the death of his partner operated by law as a revocation of the
old license, and he could sell by retail only by obtaining a new
one. Such sales as he did make were by the gallon, and he
found that they yielded far less profit than sales by the drink.
His object was to increase the value of the stock on hand, for
the benefit of creditors. Whether such was his purpose was, by
the instructions of the court, fairly submitted to the jury, and
by their verdict they indorsed the truth of his statements.
But it is said that the effect of such action on his part would
have been to convert firm assets into individual property, and
thereby necessarily to have operated as a fraud upon firm credi-
tors. A transmutation of firm assets into individual property
could only operate to the detriment of firm creditors, in the
event that the party had individual creditors. In such case it
might embarrass them by exposing the property to the claims
of this latter class; but if there were none of these, the rights
of the firm creditors could in no manner be affected. Partner-
ship debts are equally binding upon the separate property of
the partners, as upon the assets of the firm. The surviving
partner in this case was the legal owner of the firm property,
and a change of it by him, or an attempted change of it, into
individual property, could in no manner affect its liability to
the demands of firm creditors. They could only be hindered,
delayed, or embarrassed in the event that there were individual
creditors with whom they might be brought into collision.
There is not only a failure to show that there were any such
creditors in this case, but the record, by implication, strongly
negatives the existence of any. The presence of any actual
intent to defraud by this act being negatived, and there being
a failure to show that its necessary result was to operate as a
fraud upon firm creditors, this ground of attachment has not

been sustained. Our conclusion upon the whole case is, that the jury properly found that the attachment was wrongfully sued out.

It was insisted, both in the lower court and in this, that the attachment should be maintained if the jury were of opinion that the plaintiffs had reasonable ground to believe the truth of the facts set forth in the affidavit. The learned judge below rightly rejected this view. Neither the belief of the plaintiffs, nor the grounds of that belief, have ordinarily anything to do with the rightfulness of the issuance of a writ of attachment. By the affidavit, the plaintiffs assert the existence of certain facts. By his pleas in abatement, the defendant denies their existence. The sole issue for the jury to decide is, Did those facts exist? If so, the writ was rightfully sued out; if not, its issuance was wrongful. There may be cases in which the defendant will not be allowed to controvert the facts charged in the affidavit, by reason of his own previous conduct and declarations, but this does not affect the general principle, that the issue to be tried is the truth of the averment contained in the affidavit. It is simply the application of the familiar doctrine of estoppel, by which the defendant is precluded from showing the truth, because, by his previous assertion of a falsehood, he has induced the plaintiff to institute a suit which will result in serious injury to him if decided to be unfounded. Thus, if a debtor has placed on record a voluntary conveyance of his property, or avowed his intention to do so, and a creditor, believing the conveyance to be genuine, or the assertion to be sincere, has acted, in suing out an attachment in good faith, upon the belief thereby engendered, the debtor will not be allowed to say that the conveyance was a jest, or the assertion a piece of pleasantry. This is the doctrine illustrated in *Cocke* v. *Kuykendall*, 41 Miss. 65. The language used in that case is incorrect when it is said that " the issue to be tried and determined by the jury is whether the said attachment was wrongfully sued out, and not whether the facts stated in the affidavit were actually true or false." A more exact method of conveying the correct idea would be to say, that the plaintiff must establish the truth of the facts averred in the affidavit, unless the conduct of the defendant has been such as to pre-

clude him from showing their falsity. It should be borne in mind that this estoppel will not arise because of erroneous and unfounded inferences, which the plaintiffs may have drawn from the defendant's conduct, nor unless they have really acted upon the faith of that conduct, and upon the belief engendered and honestly entertained therefrom. The language or conduct must have been such as warranted the charges contained in the affidavit, the affiant must have believed them to be true, and that belief must have been caused by the acts or declarations of the debtor. Under such circumstances only will the defendant be precluded from showing the truth of the matter, and the plaintiff be relieved from establishing the existence of the facts charged by him. It will, of course, be understood that in all cases where a fraudulent intent is alleged, the jury must judge of that intent from the facts and circumstances of the case, and, notwithstanding the denials of the defendant, should find for the plaintiff if they believe that the intent existed in fact, or if the necessary consequence of the act was to defraud creditors. Fraud in law or fraud in fact alike constitutes ground of attachment, but the existence of either must be established by him who asserts it.

Although the jury properly found that the attachment was wrongfully sued out, the verdict must be reversed on account of the excessive damages allowed. The account sued on was for four hundred and thirty-four dollars. The damages allowed the defendant were six hundred and forty dollars. The allowance of damages for the wrongful issuance of an attachment, under our statute, must be compensatory only. It must not be converted into a means of paying off valid debts by recoupment or of growing rich by an excess of damages over the debt due, save in cases where great injury has in fact been sustained. The elements which the jury are allowed to take into the account are carefully defined by the statute, and are exclusive of all others. They consist of lawyers' fees, hotel bills, travelling expenses, loss of trade, and special injury to business. Code 1871, § 1462. Only two of these elements are shown to have existed here, to wit, lawyers' fees, and special injury to business. There were no hotel bills or travelling expenses.

There could be no loss of trade estimated, because the defendant was merely winding up the firm business, by selling out the stock on hand; and when he has received the full value of that stock, he will have obtained all that he is entitled to on that account. There could be no injury to credit, because it is shown that both he and his firm were hopelessly insolvent. No allowance for lawyers' fees can be made except for defending the suit brought by the plaintiffs. No account can be taken of the cross action for damages. *Furstenheim* v. *Coffee, MS.* Fees can be allowed for one firm of lawyers only, unless the jury shall be satisfied by the evidence that the necessities of the case required more than one. Defendants cannot swell the damages to be paid by plaintiffs by the unnecessary employment of a multitude of counsel. The full measure of damages to which the defendant was entitled in this case, under the proof, was the fee of one firm for defending an attachment suit for four hundred and thirty-four dollars, and the difference in price between what the goods seized sold for under the sheriff's hammer, and what they would have sold for in due course of trade, the liquors to be estimated as being sold by the gallon.

*Judgment reversed and judgment here on remittitur.*

