GOODBAR and others *v.* CARY and others.

*(District Court, N. D. Mississippi. December Term, 1882.)*

1. PARTNERSHIP—PAYMENTS OF DEBTS OF MEMBERS BY FIRM—DEED VOID AS TO CREDITORS.

Where one loans money to the individual members of a firm, taking their individual notes therefor, a conveyance of land owned by the firm in part payment of such notes is an appropriation of partnership property to the payment of the debts of its members; and if, at the time of such conveyance, the firm is insolvent, it is fraudulent as to existing creditors, although valid as between the the parties thereto, and will be set aside at the suit of a creditor who has obtained a judgment against such firm.

2. Same—Insolvency of Firm.

>So long as a firm is solvent, all its members assenting, the individual debts of the parties may be paid out of the firm assets ; but if the firm is insolvent at the time a transfer of the firm property to make such payment is made, it is fraudulent and void as to existing creditors of the firm.

In Equity.

*Taylor & Barr,* for complainants.

*Mayes & Hall,* for defendants.

Hill, J.   The questions for decision in this cause arise upon bill, answers, exhibits, and agreed state of facts, and from which the following facts appear:

Cary & Richardson were merchants doing business at Courtland, in this state.   Defendant E. Richardson loaned to Cary, in 1874, the sum of $2,000, for which Cary gave his two notes for $1,000 each,—one payable in one and the other in two years, with 10 per cent. interest from date; and also on the seventh of February, 1875, said E. Richardson loaned to defendant R. P. Richardson the sum of $4,771.24, and took a note therefor payable one day after date, with 10 per cent. interest from date.   These notes remained due and unpaid on the seventh day of January, 1881.

The firm of Cary & Richardson at that time were embarrassed and involved, and largely indebted to the firm of Richardson & May, of which said E. Richardson was and is a member—the amount of said indebtedness being the sum of $14,239.22; and being at the same time indebted to other creditors, as shown by their schedule, to the amount of $13,884, on the same day and about the same time executed, first a deed of conveyance to the real estate described in their deed to E. Richardson, at the estimated price of $2,500, in part payment of the notes mentioned above, and soon after a trust deed conveying all their remaining property and choses in action to a trustee, in which they admit their inability to pay their debts in full, and provided for the full payment of the debt due Richardson & May, and the remainder to their other creditors, *pro rata*; the two conveyances being made near the same time, and E. Richardson being interested in the trust deed, though the deed for the land was in point of time executed first, yet with a knowledge of the insolvency of the firm, and of the intended trust deed and its provisions.   The money borrowed from E. Richardson was borrowed for the purpose of being used by the firm, and it was known to said Richardson that all the means which the members of the firm owned was employed in the firm, and said Richardson looked to the interest which his said debtors respectively had in the firm property and assets for payment.

The fraud charged in the bill is denied by the answer, and there is no proof to sustain the allegations of fraud, outside of what appears upon the face of the pleadings, exhibits, and agreed facts, as stated above.

The complainants have obtained judgment upon their debt, and have had a return of *nulla bona,* and file this bill to set aside the con-

veyance to the lands as above described, on the allegation that the title so conveyed, though good and binding between the parties themselves, is fraudulent and void as to them. Among other allegations of fraud, and that now relied upon, is that the debts due E. Richardson, the grantee, were individual obligations, and that due to complainants is a debt due by the firm, and that the lands conveyed belonged to the firm and are primarily liable for the firm's debts. That the real estate was firm property before this conveyance is admitted. The question is, was the conveyance of the land described in the bill, under the circumstances, a fraud upon the rights of complainants and the other creditors holding firm debts against Cary & Richardson? It is insisted for defendants that the money loaned to each of the members of the firm was understood at the time as intended to become a part of the capital of the firm, and that the loan of part to one and part to the other was to enable them to equalize their capital stock, and that, as they had no individual property, E. Richardson looked to the property and business of the firm for payment, and that he has an equitable claim on the firm and its assets, and that the payment to him by the conveyance of the land was in good faith and free from fraud, and vested in the grantee a valid title.

If it were true that the money had been loaned to the firm, and that the individual notes of the members of the firm, each for a portion as a security for the payment of the firm liability, then it would have remained a firm liability, and this conveyance, being free from fraud, would have conveyed a good title. The fact that it was understood between the parties that the money after the loan was made was to be used in the firm business, could not of itself, according to the weight of authority, at least, create a liability upon the firm, nor could the fact that E. Richardson knew that the partnership had no individual means, and that if repayment was made it would be out of the interest which the makers of the respective notes had in the business and property of the firm, have the effect to bind the firm; and this is all that appears from the answers of the defendant, relied upon to create any equity in favor of E. Richardson upon the firm property and assets. He had the right to obtain judgment against the maker of the note, his individual debtor, and have his execution levied upon the interest of the defendants in the execution, in the property and assets of the firm. That interest was the share to which the defendant might be entitled after the payment of the firm debts, and the amount due his copartner. This is elementary law, and sustained by the adjudications. Without considering this question further, I am satis-

fied that these notes are individual obligations, and have no other claim or equity to the firm property and assets than that of any other individual creditor.

It is a well-settled rule of law in this state that, so long as a firm is solvent, all its members assenting, the individual debts of the parties may be paid out of the firm assets, as no one would be injured thereby. It is also settled by the supreme court of the United States, on general principles, in the case of *Case* v. *Beauregard*, 99 U. S. 119, that simple contract creditors have no lien upon the joint assets of a firm until the property has passed *in custodia legis*, and that if, before the interposition of the court is asked, the property has passed into the hands of a *bona fide* purchaser, or by a *bona fide* transfer has ceased to be the property of the firm, it cannot be held liable to the firm creditors' demands, and that the equities of the firm creditors to satisfaction out of the firm assets are derived through the equity which each partner has upon the firm assets to have the same applied to the payment of the firm liabilities, and then for the payment of whatever may be due the partners upon a settlement of the affairs of the partnership. In this case the bill was not filed so as to bring the lands within the jurisdiction of this court until after the conveyance to Richardson, and if that transfer, under the circumstances, was free from fraud in law or fact, there remained no such equity in complainants as to entitle them to the relief prayed for, which leaves the question as to whether or not the conveyance, under the circumstances, was fraudulent. If fraudulent, it being in payment of antecedent debts, it would be void as against existing creditors of the firm whether the grantee knew it was fraudulent or not. This rule is sustained by a current of unbroken decisions by the supreme court of this state, and recognized and adopted by the supreme court of the United States as a general rule in the case above referred to, so that if this bill is maintainable it cannot be upon the idea that complainants had any lien upon the firm property, and the lands in question in particular, which this court can as a court of equity enforce, if there was no fraud in fact or in law in the transfer. If, however, there was such fraud in law or in fact as against complainants, who were at the time of the transfer existing creditors of the firm, then the conveyance was void as to them, and they are entitled to the relief prayed for in the bill.

It is apparent, from what is stated in the pleadings and in the agreement, that Richardson, the grantee, knew at the time the deed was executed that Cary & Richardson, the grantors, were insolvent, both

as a firm and individually, and that, as part of their transaction then to be made, they would divest themselves of all their property and assets, and would have nothing left with which they could make voluntary payments, or upon which their firm creditors could obtain satisfaction of that which was due them, provided the assignment to their trustee was valid. And, further, the conveyance acknowledged their insolvency upon its face. This conveyance placed Cary & Richardson in the same condition they would have been under an adjudication of bankruptcy or insolvency under judicial proceedings.

It is held by the supreme court of the United States in the case of *Shanks* v. *Klein*, 104 U. S. 18, that in case of the death of one of the partners the real estate held by them as firm property will be treated as personal assets and applied to the payment of the debts of the firm; and Justice MILLER, delivering the opinion of the court, quotes approvingly from Story's Equity, in which it is held that the creditors have an interest indirectly in the appropriation of such property; not that they have a lien, legal or equitable, upon the property itself, but upon the equitable principle that the real estate so held shall be deemed to constitute a part of the fund from which their debts are to be paid before it can be *legally* or *honestly* diverted to the private use of the parties.

It is held by the court of appeals of New York, in the case of *Wilson* v. *Robertson*, 21 N. Y. 589, that the appropriation by an insolvent firm of partnership property to the payment of the individual debts of one partner, is not simply void, but is fraudulent, and avoids the deed of assignment. The same court, in the case of *Menagh* v. *Whitwell*, 52 N. Y. 146, holds that a "transfer by one of the partners or a lien given by him upon the *corpus* of the partnership property to pay an individual debt, although made with the consent of the other partners, is fraudulent and void as to the creditors of the firm, unless the firm was at the time solvent, and sufficient property remained to pay the partnership debts;" that is, if the firm is insolvent at the time of the transfer it is fraudulent and void. The same doctrine is held by the supreme court of Illinois, in *Keith* v. *Fink*, 47 Ill. 272, referring approvingly to the case of *Wilson* v. *Robertson*, in 21 N. Y., above referred to, in which it is held that to pay the individual debt of one of the partners is in effect a gift from the firm to one of the partners,—a reservation for the benefit of such partner or his creditors to the direct injury of the firm creditors."

, The fact that the partners joined in a conveyance of the firm assets to pay the individual debts of each, though to the same creditor,

would, under the above rule, be but a gift by each to the other, or his individual creditor; and the cases of *Schmidlapp* v. *Currie*, 55 Miss. 597; *Roach* v. *Brannon*, 57 Miss. 490 and 5 Ohio, ——, and other cases referred to and relied upon as maintaining the opposite rule, when examined, do not apply to a case in which the parties are bankrupt or insolvent, so declared by their deed of assignment, in which they divest themselves of all their property and rights in action, as in this case.

After a careful examination of the question, and the authorities relied upon on both sides, I am unable to come to any other conclusion than that this conveyance, under the circumstances, was a fraud in law upon the rights of complainants and the other firm creditors, who were such at the time of the execution of the deed, and that complainants, having obtained a judgment, with a return of *nulla bona*, have the right by their bill to have a decree setting aside the conveyance as to their claim, and to the payment of their judgment out of the proceeds of the sale of the land, unless the same shall be paid within a reasonable time. The sale being valid as between the parties, Richardson, the grantee in the deed, has a right to discharge the complainants' judgment and costs, and retain the land. I regret that there is not an appellate tribunal by which this ruling can be reviewed and the errors, if any, corrected.

———

Mr Justice LINDLEY, in his valuable work on Partnership,(*a*) justly says: "It is an erroneous but popular notion that if a firm obtains the benefit of a contract made with one of its partners, it must needs be bound by that contract. Now, although the circumstance that the firm obtains the benefit of a contract entered into by one of its members tends to show that he entered into the contract as the agent of the firm,(*b*) such circumstance is no more than evidence that this was the case; and the question upon which the liability or non-liability of the firm depends is not, has the firm obtained the benefit of the contract? but, did the firm, by one of its partners or otherwise, enter into the contract?"(*c*)

"In ordinary cases, where one partner borrows money without the authority of his copartners, the contract of loan is with him and not with the firm; and the nature of that contract is not altered by his application of the money."(*d*)

(*a*) Page 361.

(*b*) Per Rolfe, B., in Beckham v. Drake, 9 M. & W. 100.

(*c*) Rolfe, B., in Beckham v. Drake, supra; Kingsbridge Flour Mill Co. v. Plymouth Grinding Co. 2 Ex. 718; Ernest v. Nicholls, 6 H. L. C. 423; Ex parte Bonbonus, 8 Ves. 544; Emly v.

Lye, 15 East, 7; Bevan v. Lewis, 1 Sim. 376; Union, etc., Bank v. Day, 12 Heisk. 413; Peterson v. Roach, 32 Ohio St. 374. Bevan v. Lewis is an instructive case upon this point.

(*d*) 1 Lind. Part. *362; Smith v. Craven, 1 Cr. & J. 500; Hawtayne v. Bourne, 7 M. & W. 595; Burmester v. Norris, 6 Ex. 796; Ricketts v. Ben-

"It is competent for partners, by agreement among themselves, to convert that which was partnership property into the separate property of an individual partner, or *vice versa*."(e)

"As the ordinary creditors of an individual have no lien on his property, and cannot prevent him from disposing of it as he pleases, so the ordinary creditors of a firm have no lien on the property of the firm so as to be able to prevent it from parting with that property to whomsoever it chooses."(f)

"Agreements come to between partners converting the property of the firm into the separate estate of one or more of its members, and *vice versa*, are, *unless fraudulent*, binding not only as between the partners themselves, but also on their joint and on their respective several creditors; and, in the event of bankruptcy, the trustees must give effect to such agreements."(g)   So, during the existence of a partnership, which is neither bankrupt nor contemplating bankruptcy, one of the members of the firm may, with the consent of the other partner or partners, upon a *bona fide* consideration, with no benefit reserved, assign and transfer the assets of the partnership in payment of his individual debt, if no lien has attached to such assets; and such transfer is good against the firm creditors.(h)   But a transfer by one partner of an interest in, or a lien given by him upon, the *corpus* of the partnership property to pay an individual debt, although made with the consent of the other partners, is fraudulent and void as to the creditors of the firm, unless the firm was at the time solvent, and sufficient property remained to pay the firm debts.(i)   Nor can the members of an insolvent partnership, by mutual consent, divide the partnership funds between themselves so as to enable each member to apply the part allotted to him in a preferred payment of his separate debts, leaving the joint debts unsatisfied; and a transfer of such partnership property to an individual creditor in payment of an antecedent debt, with a knowledge on the part of the creditor of such design, will not enable him to hold it discharged from the equitable lien of the partnership creditors.(j)   In *Ferson* v. *Monroe*(k) it was held that if partners sell their stock in trade in order that the proceeds may be applied by the purchaser to pay the separate debt of one partner, with the intent thereby to prevent the creditors of the firm from having the remedy which the law would otherwise give them on the property of the firm, such sale is void as to the creditors of the firm, although the separate debt of the partner was contracted for money which was put by him into the business and capital of the firm.   Partners in fact insolvent

nett, 4 C. B. 686; In re Worcester Corn Ex. Co. 3 De G., M. & G. 180; Fisher v. Taylor, 2 Ha. 218; Union, etc., Bank v. Day, and Peterson v. Roach, supra.

(e) 1 Lind. Part. *654; Bullitt v. M. E. Church, 26 Pa. St. 108; Hickson v. McFaddin, 1 Swan, 258; Dimon v. Hazzard, 32 N. Y. 65; Evans v. Hawley, 35 Iowa, 83; Whitworth v. Benbow, 56 Ind. 194; Upson v. Arnold, 19 Ga. 190.

(f) See Wilcox v. Kellogg, 11 Ohio. 394; Sigler v. Knox Co. Bank, 8 Ohio St. 511; White v. Parish, 20 Tex. 689; Potts v. Blackwell, 4 Jones, Eq. 58; Field v. Chapman, 15 Abb. Pr. 434; Robb v. Mudge, 14 Gray, 534; Allen v. Centre Valley Co. 21 Conn. 130; Schmidlapp v. Currie, 55 Miss 597;

Reeves v. Ayers, 38 Ill. 419; Reese v. Bradford, 13 Ala. 837; State v. Thomas, 7 Mo. App. 205; Shackleford v. Shackleford, 32 Grat. 481.

(g) 1 Lind. Part. *655.

(h) Schmidlapp v. Currie, 55 Miss. 597; Reeves v. Ayers, 38 Ill. 418.

(i) Wilson v. Robertson, 21 N. Y. 587; Menagh v. Whitwell, 52 N. Y. 146; Keith v. Fink, 47 Ill. 272; Cox v. Platt, 32 Barb. 126; Knauth v. Bassett, 34 Barb. 31; Henderson v. Hadden, 12 Rich. Eq. 393; French v. Lovejoy, 12 N. H. 458.

(j) Burtus v. Tisdall, 4 Barb. 571; Ransom v. Van Deventer, 41 Barb. 307.

(k) 21 N. H. 462.

are considered in equity as holding the partnership effects in trust for the benefit of the firm creditors, and cannot, by a transfer of the interest of one to the other, defeat this trust.(*l*)   A division, however, of partnership property between the partners in proportion to their interests, for the purpose of protecting the property from seizure by the individual creditors of one of the partners, is not unlawful, and cannot be avoided as a fraud upon the individual creditors.(*m*)

Were authority necessary to support an opinion so eminently reasonable as that rendered by the learned judge who decided the principal case, it is believed that the perusal of the cases above cited in this note will convince the reader of the correctness of that decision                    M. D. EWELL.

*Chicago, May* 21, 1883.

(*l*) In re Cook, 3 Biss. 122.                    (*m*) Atkins v. Saxton, N. Y. 195.