KNAUTH and KUHNE *vs.* BASSETT and others.

Although the law is now settled, by the decision of the court of appeals in *Wilson* v. *Robertson*, (21 *N. Y. Rep.* 587,) that the appropriation, by an insolvent firm, of partnership property to the payment of the individual debts of one of the partners, is fraudulent and renders the assignment void, as to creditors of the firm; yet an assignment which purports to be an assignment of all individual as well as of all partnership property, is not fraudulent and void on its face, where there is nothing appearing thereon to show that all the partners may not have had individual property, when the assignment was made, more than sufficient to pay their individual debts preferred by the assignment.

If in fact the assignment includes sufficient individual property of each partner to pay his individual debts directed to be paid by the assignee, such a direction will not render the assignment void.

It is, under such circumstances, for the assignors and their assignee to show, affirmatively and satisfactorily, that the individual property of each partner was sufficient to pay his preferred individual debts.

If that fact is not satisfactorily shown, the assignment will be held to be fraudulent and void, as against judgment and execution creditors of the assignors.

Persons not made parties to a former action are not barred or estopped from raising, in a subsequent action, questions not raised or passed upon in the former.

A judgment creditor is not obliged to wait until the expiration of the sixty days within which an execution must be returned, before commencing an action to set aside an assignment executed by the judgment debtor. He may commence such action as soon as the execution issued upon his judgment has been actually *returned*.

Such an action is brought in time, if commenced while the assignee has yet in his hands, unappropriated, moneys belonging to the trust, which it is the object of the action to reach.

THIS action was brought by the plaintiffs, as judgment creditors of Bassett & Aborn, formerly copartners in business, to set aside an assignment executed and delivered by them to the defendant Thomae, on the 15th day of August, 1854. The complaint alleged the indebtedness of Bassett & Aborn to the plaintiffs, and their recovery of judgment thereon, on the 2d of January, 1858, for $3326.13; that executions were duly issued on such judgments, and have been severally duly returned unsatisfied; that on the 15th day of August, 1854, Bassett & Aborn, being then insolvent and unable to

pay the debts of the firm either out of their copartnership effects or their individual property, executed and delivered to the defendant Thomae the assignment, which is set out in *hæc verba*. This assignment was in trust to pay in full— first, the debts described in schedule A.; second, to pay in full the debts described in schedule B.; and lastly, to pay all other unpaid debts. Schedule A. has in it these words : " Elizabeth A. Havens of Florida, for money lent to R. W. Aborn, $100 ; Mary E. Tyler, of Rhode Island, for money rec'd by R. W. A. for her use, besides interest and upwards, $60." Schedule R. contains these words : " Isaac H. Bassett's note to Mary E. Chamberlain, besides interest, $900. Isaac H. Bassett's note to Lydia F. Arnold, about, besides interest, $200." The complaint further alleged that this assignment was made to hinder, delay and defraud creditors, and that it was void upon its face, among other reasons, " because it appropriates the interest of the said Aborn in the said copartnership property, and his individual property, to the payment of the individual indebtedness of the said Isaac H. Bassett, and because it appropriates the interest of the said Isaac H. Bassett in the said copartnership property, and his individual property, to the payment of the individual indebtedness of the said Aborn ; that said individual indebtedness of the said Bassett & Aborn, and of each of them, was contracted long prior to the 21st day of December, 1853, when their said copartnership was formed ;" and that the assignee had in his hands funds sufficient to pay the plaintiffs' debt ; and prayed that the assignment might be adjudged fraudulent and void, and that the assignee might be decreed to pay the plaintiffs' debt out of the assigned estate. The defendant Thomae answered separately, that he had paid all the preferred creditors mentioned in schedule A. except Horatio Bassett ; that he had no knowledge or belief as to the allegations of fraud in the complaint ; that he heretofore commenced an action against Horatio Bassett, praying for a construction of so much of the assignment as related to Horatio

Bassett, in which the court adjudged that the said Horatio Bassett was a preferred creditor, and entitled to be paid in common with other creditors of the same class; that an account was ordered which had been taken, by which it appeared that he, Thomae, had in his hands, as such assignee, $3246.30; and that a decree was entered in said action directing Thomae to pay such balance to Horatio Bassett, as a preferred creditor. Isaac H. Bassett answered separately, and denied the fraud; insisted upon his legal right to make the assignment; denied that the assignment appropriated his individual and copartnership property, as alleged in the complaint; averred that the firm of Bassett & Aborn were indebted to him in the sum of $10,000; that he was a creditor of the firm to that amount, and that it was indebted to him individually; that Aborn had individual property more than sufficient to pay his individual debts preferred in the assignment, and that he, Isaac H. Bassett, had individual property more than sufficient to pay all his individual debts, and those of Aborn; that Thomae has paid all the preferred creditors except Horatio Bassett; averred the proceedings in the action between Thomae and Horatio Bassett; that the plaintiffs have been paid a portion of their debt by receiving from the assignee a portion of the assigned estate, to wit, a parcel of goods, and that they received the same in part payment of their debt; that the assets of Bassett & Aborn exceeded their liabilities by over $20,000; that the individual creditors preferred in the assignment have released the assignee. The defendant Aborn answered separately, and denied the fraud; averred that he had individual property more than sufficient to pay his individual indebtedness preferred in the assignment; that the assets of the firm exceeded their liabilities, and that the plaintiffs have accepted and received from the assignee a parcel of goods in part payment of their debt. By a stipulation between the parties, the allegations of the complaint were admitted, as to—1. The copartnership of the plaintiffs and of the defendants Bassett & Aborn. 2. The recovery of judg-

ment by the plaintiffs. 3. The issuing and returning of executions thereon. 4. The then residence of the defendants Bassett & Aborn. 5. The execution and delivery of the assignment, and that the copy thereof set out in the complaint was correct. On the hearing of the case at special term, his honor Justice Roosevelt found in favor of the defendants on all the issues of fact; that there was no fraud, in fact, and that Bassett and Aborn had each, at the time of the assignment, more of individual property than sufficient to pay their respective individual debts preferred, and the complaint was therefore dismissed, with costs.

On the trial, the defendants raised the objection that the action was prematurely commenced; there having been but six days between the issuing of the plaintiff's execution and the commencement of this suit. It appearing, however, that the execution had been *actually returned* unsatisfied, before the suit was commenced, the court overruled the objection.

The plaintiffs appealed from the judgment rendered at the special term.

*C. A. Seward*, for the appellants.

*E. & E. F. Brown*, for the respondents.

*By the Court*, Sutherland, J. It is hardly worth while to discuss the question, whether the decision of the court of appeals in *Wilson* v. *Robertson*, (21 *N. Y. Rep.* 587;) was the enunciation of a *new* principle. That court has decided, in that case, that the appropriation by an insolvent firm of partnership property to the payment of the individual debts of one of the partners, was not simply void, but was *fraudulent* as to the partnership creditors, under the statute, as hindering and delaying them in the collection of their debts; and is controlling in this case, as to that question of law.

The long settled and conceded principle, that equitably partnership property should be appropriated to the payment

of partnership debts, and individual property to the payment of individual debts, will not alone enable the plaintiffs to maintain this action as judgment and execution creditors for their own benefit only; for this principle alone would not give them, as such creditors, any right or preference over other creditors of the firm, with or without judgments. This principle appropriates the partnership property to the payment of all the partnership debts, pro rata, and would not enable the plaintiffs to maintain this action in their own names alone, and for their own exclusive benefit. (*Kirby* v. *Schoonmaker*, 3 *Barb. Ch. Rep.* 46. *Nicholson* v. *Leavitt*, 4 *Sandf.* 278 to 308. *Wakeman* v. *Grover*, 4 *Paige*, 34; *S. C.* 11 *Wend.* 207.)

The plaintiffs' right then, to maintain this action, rests upon the principle held by the court of appeals in *Wilson* v. *Robertson;* that is, that an assignment by an insolvent firm, by which partnership property is appropriated to pay individual debts, is fraudulent and void as to creditors of the firm.

In this case, the assignment by the defendants Bassett & Aborn purports on its face to be not only an assignment of all the partnership property of the firm of Bassett & Aborn, but also of all their individual property, in trust to pay in full—first, the debts mentioned in schedule A; second, to pay in full the debts mentioned in schedule B; and lastly, to pay all other unpaid debts.

Schedule A specifies a debt of the defendant Aborn to Elizabeth A. Havens of $100, for money lent; and a debt of his to Mary E. Tyler for money received for her use, of $60 and interest. Schedule B specifies a note of the defendant Bassett to Mary E. Chamberlain for $900, besides interest, and a note of his to Lydia F. Arnold for $200, besides interest.

It appears then by the assignment on its face, that certain individual debts of each partner were preferred.

The case, I think, shows conclusively that Bassett & Aborn, as a firm, were insolvent when they made the assignment. The defendant Thomae, the assignee, testifies that the amount which had been realized from the assets of Bassett &

Aborn was insufficient to pay the preferred debts; that the amount of outstanding debts against the firm was between $70,000 and $80,000; that he had in his hands about $2886; that that was all he had to apply on the unpaid debts of at least $70,000, except about $7000 in old claims, from which he did not believe he would realize $100. The assignment on its face states substantially the firm to be insolvent; for it recites that the assignors were " unable to meet their engagements and pay their debts as they severally mature."

The court below found as matter of fact, that Bassett & Aborn, at the time of making the assignment, were insolvent and unable to pay their debts, either out of the copartnership effects or their individual property.

Assuming that it appears on the face of the assignment that the firm was insolvent, yet I do not think that it can be said, giving full force to the decision in *Wilson* v. *Robertson,* that the assignment is fraudulent and void *on its face;* for the assignment on its face purports to be an assignment of all individual as well as of all partnership property; and from aught that appears on the face of the assignment, both partners may have had individual property when the assignment was made, more than sufficient to pay their individual debts preferred by the assignment. If in fact the assignment included sufficient individual property of each partner to pay his individual debts to be paid by the assignee, I do not think that the case of *Wilson* v. *Robertson* goes to the extent of holding that the assignment would be fraudulent, although in that case it would appear that the joint assignment included *some* individual property of the partner whose creditors were preferred.

If then in this case the assignment is to be held fraudulent and void, it must be upon the ground that the assignors had no individual property; or at least it should appear that they had not sufficient severally to pay their preferred individual debts.

The question of fact, upon which the question of fraud or of fraudulent intent depends, is really the embarrassing question in the case. The court below found as facts, that at the date of the assignment Bassett & Aborn each had individual property sufficient to have paid the preferred individual debts under the assignment; that Bassett owned one half of the assets of previous firms of which he had been a member, and that $5000 of such assets were collectable when the assignment was made; that Aborn owned household furniture which was worth $500, but which might not have brought $250 at auction, and also owned a third of the assets, of which $5000 was collectable. After a careful examination of the evidence, I must say that in my opinion those findings of facts were erroneous, and not warranted by the evidence.

It was for the defendants to show, affirmatively and satisfactorily, that the individual property of each partner was sufficient to pay his preferred individual debts. Thomae, the assignee, testified that he had never received as assignee any individual property of either Bassett or Aborn. Bassett did not claim to have any individual property, except one half interest in some old claims of previous firms of which he had been a member, and $10,000 due him from the firm of Bassett & Aborn for excess of capital contributed by him to that firm. He testified that the claims of previous firms consisted of from $30,000 to $40,000 of open uncollected accounts of the old firm of Bassett & Aborn, which existed from 1849 to 1851, and was then dissolved; that these claims were debts due the old firm at its dissolution in 1851. He did not undertake to specify any particular debt or account as being collectable, or as having any value at the date of the assignment. Aborn testified that he had no individual property at the time of the assignment, except his household furniture, and a third interest in the uncollected debts of the old firm of Richards, Bassett & Aborn, which was dissolved in 1849, and of certain other old firms. He further testified that he would not have taken $1000 for his interest in the old claims

at the time of the assignment, and thought there was $5000 of them collectable; but when asked to specify any claim or debt which was collectable, he mentions a debt which was contracted in 1845, and which from his testimony it appears an unsuccessful attempt was made to collect in 1854.

Thomae, the assignee, testified in relation to these old claims or assets of old firms, that neither Bassett or Aborn called his attention to the old accounts or the books of the old firms; that no evidences of such claims were ever put in his hands; that he never collected any debts due either of the old firms; and that in the statement of the assets furnished him as assignee, there was no mention of any debts due the old firms; that Bassett told him he had assigned all his interest in the books of Richards, Bassett & Aborn long ago, and all the old concerns, as he understood him.

This was the principal and material evidence relating to these old debts or claims, and the interest of Bassett and Aborn individually in them. Does the evidence satisfactorily show that these old claims, or Bassett and Aborn's interest in them individually or otherwise, had any value? I think not. The evidence certainly does not show that any one of these old claims or debts, or any portion thereof, was collectable.

As to the $10,000 debt claimed by Bassett to have been due him from the firm of Bassett & Aborn, it can hardly be said that the evidence in the case establishes that claim as a debt due from the firm to Bassett; but if it does, Bassett was not and probably could not have been preferred in the assignment. He must come in, if at all, as a general creditor under the assignment. The assignee testifies that the amount realized from the assigned assets was insufficient to pay the preferred debts; that none of the general creditors had been paid, and he had no funds to pay them. This claim of Bassett, then, against his firm, if it could be called a debt of the firm, could hardly be called property. It had no value.

As to the household furniture of Aborn; none of it passed

Knauth *v.* Bassett.

into the hands of the assignee, or was included in the statement of the assigned property furnished the assignee. Aborn says it might not have brought $250. I think it fair to assume that it was worth no more, and that it was excepted in the assignment as property exempt from execution.

My conclusion of fact then upon the whole case is, that it was not satisfactorily shown that Bassett and Aborn had either of them, at the date of the assignment, (August 15th, 1854,) individual property of any value over and above that by law exempt from execution, and as such excepted in the assignment; certainly not property of value amounting to any considerable portion of the preferred debts of each. And my conclusion of law is, that the assignment, under the decision of the court of appeals in *Wilson* v. *Robertson*, must be held to have been, and to be, fraudulent and void as against the plaintiffs as judgment and execution creditors.

It is true that the court below found as a fact, that there was no fraud or intent to defraud in making the assignment. I do not regard this finding of much importance. A man's intention is generally to be gathered from his acts, and the results of his acts.

The result of this assignment has been that a portion of the copartnership property of Bassett & Aborn has gone to pay their individual debts, leaving the plaintiffs and other partnership creditors unpaid. The assignee testifies that he had paid Bassett's individual debts, amounting to $1406.58, and Aborn's individual debts, amounting to $189.05, out of the copartnership assets. It may be that neither Bassett nor Aborn thought it fraudulent or morally wrong to pay their individual debts with their copartnership property; but the court of appeals have pronounced such an act fraudulent as to their partnership creditors; and perhaps it may be said that the court of appeals have pronounced such an act conclusive evidence of fraud.

The remaining material question in this case is, whether the plaintiffs were barred or estopped by the decree in the

action of *Thomae* v. *Bassett and others*, from maintaining this action. I think they were not; because the plaintiffs in this action were not parties to that action; nor does it appear that the question of the validity of the assignment was raised or passed upon in that action. (*Vail* v. *Vail*, 7 *Barb.* 226. *Campbell* v. *Hall*, 16 *N. Y. Rep.* 575. *Mason's Ex'rs* v. *Alston*, 5 *Selden*, 28.)

I do not think the point taken by the defendants, that this action was prematurely commenced, well taken. The action was not commenced until the execution had been returned. It does not appear that it was returned within the sixty days, at the request of the plaintiffs or of their attorney. By the code, the execution is to be returned *within* sixty days. It can hardly be said that under the code the execution has a return day. The cases cited, *Cassidy* v. *Meacham*, (3 *Paige*, 311,) and *Williams* v. *Hogeboom*, (8 *id.* 469,) at most show probably only a *rule of practice* of the former court of chancery, not applicable to the present system.

Nor do I think the point, that the plaintiffs have waived their claim by long acquiescence, or by the acceptance of goods of the assignee, well taken. The assignee has yet in his hands $2886, and it is the object of this action to reach that money. If the plaintiffs had waited until the assignee had appropriated it under the assignment, perhaps the plaintiffs would have been too late.

As to the goods in the bonded warehouse at the time of the assignment, and which were afterwards received by the plaintiffs, it does not appear that they were received by the plaintiffs on account of their claim in this action. As to those goods, the question appears to have been, whether they were the goods of the plaintiffs, or of Bassett & Aborn, at the time of the assignment. The assignee took legal advice, and was advised to give them up, and did give them up to the plaintiffs as their property, and as not having passed under the assignment. This appears from the testimony of the assignee.

The finding of fact below, " that after the assignment, the

Mayor &c. of New York *v.* Second Avenue R. R. Co.

plaintiffs received from the assignee a quantity of merchandise purchased of them by Bassett & Aborn before their failure, in part extinguishment of the plaintiffs' claim," appears to me to be contradicted by the evidence, and to be clearly erroneous.

Upon the whole case, my conclusion is that the judgment below should be reversed and a new trial ordered; costs to abide the event.

New trial granted.

[NEW YORK GENERAL TERM, February 4, 1861. *Clerke, Ingraham* and *Sutherland,* Justices.]