DANIEL E. CORBITT v. LEWIS M. CUTCHEON AND
LOOMIS K. BISHOP.

*Fraudulent conveyances—Trust—Estoppel.*

1. In this case the sale under which plaintiff claims, although evidenced by a bill of sale absolute in form, and followed by a delivery of the property, is held not to have been in *fact* absolute, but to have been made upon a secret trust to pay certain secured creditors, and then reconvey and return to the vendors any property which should remain after such payment; that the intent of the parties in making said conveyance was a question which, under the testimony, was fairly submitted to the jury, whose verdict has settled it in favor of the defendants, who allege said sale to have been made with intent to hinder, delay, and defraud the creditors of plaintiff's grantors.

2. In such a case the fact that a creditor of the grantor hired sawing done at a mill included in said conveyance, with knowledge of the terms of the alleged sale received soon after it was made, which sawing he paid for,—the grantee refusing to apply any part of the saw bill upon the creditor's debt,—is not such an act as will preclude him from attacking the validity of the sale.

3. Mere notice without any action on the part of the creditor, and mere acquiescence by taking no present measures to set aside the conveyance or interfere with the transfer, does not amount to a confirmation.  The creditor can be precluded from assailing the transfer only on the ground of estoppel or agreement.  There must have been a benefit conferred upon him, or some disadvantage suffered by the vendee, such as ought to

bind the conscience of the creditor, or clothe his act with the character of a contract. *Bank v. Davis*, 44 N. H. 548; *Jenness v. Berry*, 17 Id. 549; *Knauth v. Bassett*, 34 Barb. 31; *Annin v. Annin*, 24 N. J. Eq. 184; *Hays v. Heidelberg*, 9 Penn. St. 203.

4. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

*a*—The intent of the parties to a conveyance, and its effect upon the grantor's creditors, form the criterion by which to determine whether the conveyance is fraudulent. *Pierce v. Hill*, 35 Mich. 199.

*b*—If a conveyance is made with intent to hinder or delay or defraud creditors of the grantor in the collection of their demands, it will be fraudulent as to them. *Cleland v. Taylor*, 3 Mich. 201; *Trask v. Green*, 9 Id. 358; *Maynard v. Hoskins*, Id. 485; *Pierce v. Rehfuss*, 35 Id. 53; *Allen v. Kinyon*, 41 Id. 281.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued November 8, 1889. Decided December 28, 1889.

Trover. Plaintiff brings error. Affirmed. The facts are stated in the opinions.

*Maher & Felker* and *D. E. Corbitt*, in *pro per.*, for appellant, contended for the propositions stated in the dissenting opinion.

*Tatem & Quinsey*, for defendants, contended for the doctrine laid down in the main opinion.

CHAMPLIN, J.    Section 6203 of Howell's Statutes enacts that—

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods, ·or things in action   *   *   *   made with the intent to hinder, delay, or defraud creditors   *   *   *   of their lawful suits, damages, forfeitures, debts, or demands,   *   *   *   shall be void."

The intent of the parties, and the effect of the con-

veyance upon the creditors of the grantor, form the criterion to determine whether such conveyance is fraudulent. *Pierce v. Hill*, 35 Mich. 199. If the conveyance is made with intent to hinder or delay or defraud creditors of the grantors in the collection of their demands, it will be fraudulent as to them. *Cleland v. Taylor*, 3 Mich. 201; *Trask v. Green*, 9 Id. 358; *Maynard v. Hoskins*, Id. 485; *Smith v. Rumsey*, 33 Id. 183; *Pierce v. Rehfuss*, 35 Id. 53; *Allen v. Kinyon*, 41 Id. 281 (1 N. W. Rep. 863).

Buchanan & Misner, by a bill of sale, conveyed all their property to the plaintiff in this suit, absolute in form, and the property was delivered to him. But it was not, in fact, an absolute sale. It was made upon a secret trust to pay certain secured creditors, and to reconvey and return to Buchanan & Misner any property which should remain after paying such secured creditors. There were other creditors than those the conveyance was intended to prefer, and among them was Lewis M. Cutcheon, the defendant in this suit. The intent of the parties in making the conveyance was a question which, under the testimony, was fairly submitted to the jury; and they, under the law as given them by the court, found a verdict for the defendants. The question of fact is, upon this record, settled by the verdict that the sale to Corbitt was made with intent to hinder, delay, and defraud the creditors of Buchanan & Misner.

The only question upon which I have entertained any doubt is whether defendant Cutcheon, by delay in not commencing suit sooner, or by any transaction with Corbitt, had acquiesced in or confirmed the transaction. The statute was made for the benefit of creditors, and they may dispense with a provision of law which is made for their benefit. Mr. Cutcheon was informed, a short time after the occurrence, of the terms of the alleged sale. But mere notice, without any action on the part

of the creditor, and mere acquiescence, by taking no present measures to set aside the conveyance or interfere with the transfer, does not amount to a confirmation. He can be precluded from assailing the transfer only on the ground of estoppel or agreement. There must have been a benefit conferred upon him, or there must have been some disadvantage suffered by Mr. Corbitt, such as ought to bind the conscience of Mr. Cutcheon, or clothe his act with the character of a contract. *Bank v. Davis,* 44 N. H. 548; *Knauth v. Bassett,* 34 Barb. 31; *Jenness v. Berry,* 17 N. H. 549; *Annin v. Annin,* 24 N. J. Eq. 184; *Hays v. Heidelberg,* 9 Penn. St. 203.

Mr. Cutcheon hired sawing done at the mill, but paid for such sawing; and Mr. Corbitt refused to allow any part of the pay for such sawing to be applied upon his debt. We do not think that this was such an act as precludes Mr. Cutcheon from his remedy to attack the validity of the sale to Corbitt.

We are unable to perceive any error in the record, and the judgment is affirmed.

MORSE and LONG, JJ., concurred with CHAMPLIN, J.

CAMPBELL, J., (*dissenting*). Plaintiff sued defendants, in trover, for the engine and machinery and appurtenances of a saw-mill. Defendants pleaded, with a notice setting up a levy on the property as that of the firm of Buchanan & Misner, composed of Augustus Buchanan, John L. Buchanan, and John Misner, under two judgments, in favor of Sterns & Spencer and Lewis M. Cutcheon, respectively, rendered in November, 1887.

The case shows that in November, 1882, the firm of Buchanan & Misner, of Grand Rapids,—all of the members uniting,—conveyed their property to plaintiff, consisting chiefly of lumber, in various shapes, there and elsewhere, and of some real property, with a saw-mill,

and the usual movable property used in the business. The property was about to be taken on chattel mortgages, and the parties were thinking of an assignment; but it was concluded to turn everything over to plaintiff, who would thereupon provide for the mortgages, and carry the business until it could be worked out, if possible, so as to save something beyond the secured debts. Plaintiff assumed possession, employing the members of the firm to superintend the business, which was carried on openly, in his name. He raised money by mortgage to pay off the pressing claims, and continued carrying on the business till June, 1886, when the property now in dispute was sold, conditionally, under contract, to Frederick L. Spencer and Alta Misner, for what plaintiff claimed was the balance still due him for his advances in carrying on the business; the sale being defeasible on non-fulfillment.

The testimony of Cutcheon and Frederick L. Spencer, the complaining judgment creditors, shows that they were fully informed of the transfer, and its purpose, and that both of them dealt with Mr. Corbitt, as owner of the property, and took no steps to oppose him until after he had reclaimed the property now in controversy from Spencer and Mrs. Misner. It appears, also, that in purchasing from Corbitt the purchase was made on the expectation and agreement between Spencer and others that the property would be worth enough more than the amount due Corbitt to pay Spencer's firm their debt, which was not in suit, and was only sued after the default in paying Corbitt.

From the whole record, it appears that the controversy chiefly turned on the validity of the original transfer to Corbitt, in 1882, and went to the jury on that basis. No point is made that it was voidable in law, and the legal questions were made dependent on fraud in fact.

It appears with equal clearness that the parties defend-

ing complain, chiefly, that Corbitt has not fairly accounted for the proceeds of the trust, and that there is not due him so much as he claims. It does not appear that any creditor but those now holding the judgments has ever complained.

If the property passed to Corbitt in 1882, there can be no leviable interest in his assignors. The transaction was not a mortgage, but a trust, the primary object of which was to enable Corbitt at once to raise money, by mortgage or otherwise, to save the property from sacrifice, and which also contemplated advances and other acts on his part, to be reimbursed out of the proceeds of sales, and management. There can be no doubt of his liability to account for his doings, and that there are means whereby the creditors of his assignors could reach their interest, if necessary; but that interest could only be worked out in a court of equity, and was not a leviable estate or interest by execution at law.

We do not think there is any testimony showing that, in putting their property in Corbitt's hands, his assignors meant to defraud their creditors. But the judgment creditors here, by their own showing, would be estopped from denying the original validity of the transaction, which, if properly carried out, was apparently calculated to save, and not to waste, their estate. Its validity cannot be destroyed by any matter *ex post facto*. If there was any subsequent fault anywhere, it could not destroy what was valid originally.

All the attempts to destroy it by testimony of these subsequent matters were improperly received, so far as they got in. The court below apparently held the proper view of the law on this point when the charge was given, but overlooked the fact that the judgment creditors had, by their own showing, acquiesced in the arrangement throughout. While the charge does not seem to recog-

nize any equity in Spencer, it recognizes Cutcheon's right to complain, without reference to his acquiescence, which was as clearly shown as that of Spencer.

Defendants' brief refers to a chancery case in which it is claimed the same judgment creditors have impleaded Corbitt for relief. We are not informed, from the record, what that case is, and it is not pleaded in any way, so that we do not perceive its pertinency in this proceeding, and its introduction in the argument is irrelevant. If it was properly framed to reach any equities involved between the parties, the court in which it is pending can protect them; but, if the property levied on by defendants was not subject to levy, it could not have any direct bearing on the present suit. Whatever equities exist against Corbitt, this is not the forum or case to determine them. Taking this record as we find it, we think the judgment is erroneous, and should be reversed, with costs, and a new trial awarded.

SHERWOOD, C. J., concurred with CAMPBELL, J.