## HOLLISTER et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1906.)

No. 2,253.

1. INDIANS—CRIMES—STATUTES.

Where, on scire facias on a forfeited recognizance, the record did not disclose that the accused was an Indian or that he stole the property charged from another Indian, he was not subject to Act Cong. March 3, 1885, § 9 (23 Stat. 362, c. 341), declaring that all Indians committing certain designated offenses against the person or property of another Indian within or without the territory of an Indian reservation shall be subject to the laws of the territory relating to such crimes, and

shall be tried in the same courts and be subject to the same penalties as are all other persons charged with the commission of such crimes.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indians, § 66.]

2. SAME—FEDERAL COURTS—JURISDICTION—STATUTES.

Act Cong. Feb. 2, 1903, c. 351, 32 Stat. 793 [U. S. Comp. St. Supp. 1905, p. 719], conferring jurisdiction on the federal District Courts of the District of South Dakota to try prosecutions for larceny committed by any person on any Indian reservation within the state, was within the power of Congress as an instrumentality employed in the discharge of a national duty to the Indians.

3. SAME—STATES—JURISDICTION—RÉLINQUISHMENT—CONSENT OF PEOPLE.

South Dakota Const. art. 26, declares that all Indian lands within the state shall remain under the absolute jurisdiction and control of Congress until the Indian title thereto shall be extinguished by the United States, and that jurisdiction be ceded to the United States over the military reservations and shall be irrevocable without the consent of the United States, and also the people of South Dakota "expressed in their legislative assembly." By Act Cong. Feb. 8, 1887 (24 Stat. 389, c. 119); large bodies of lands embraced within the several reservations within South Dakota, permanent improvements erected thereon, and stock and personal property derived from the government became exempt from state taxation, and the state by Sess. Laws S. D. 1901, p. 132, c. 106, relinquished to the United States exclusive jurisdiction to arrest, prosecute, and punish all persons commiting offenses denounced by Congress on any Indian reservation within the state. Held, that such acts were sufficient to evidence the assent of the people of South Dakota to Act Cong. Feb. 2, 1903, c. 351, 32 Stat. 793 [U. S. Comp. St. Supp. 1905, p. 719], conferring jurisdiction on federal courts to try certain offenses committed on any Indian reservation in such state.

4. SAME—PUNISHMENT—STATUTES.

Act Cong. Feb. 2, 1903, c. 351, 32 Stat. 793 [U. S. Comp. St. Supp. 1905, p. 719], providing for the punishment of certain offenses committed on any Indian reservation in South Dakota, and declaring that persons committing such offenses shall be subject to the same penalties and punishments as "are" all other persons convicted of such crimes under the laws of the state of South Dakota, fixed the punishment for the offenses as provided by the laws of South Dakota at the time the act was passed, and was not objectionable as delegating to the state authority to fix the punishment in the future for such federal offenses.

5. COURTS—RULES OF DECISION—FEDERAL COURTS.

On the question whether a writ of scire facias on a forfeited recognizance is the commencement of a new action or a mere continuation of another original proceeding, the decisions of the Supreme Court of the United States are conclusive on the federal, Circuit, and District courts.

6. BAIL—SCIRE FACIAS—NATURE OF WRIT—SUFFICIENCY.

A scire facias on a forfeited recognizance takes the place of the declaration in an original suit, and its sufficiency must be determined by its averments alone, apart from the record on which the writ issues.

7. SAME—EVIDENCE.

In a proceeding by scire facias on a forfeited recognizance, the record on which the writ issued is admissible in evidence to establish plaintiff's cause of action.

8. JURY—TRIAL BY JURY—RIGHT—FEDERAL COURTS—SCIRE FACIAS.

Under Const. U. S. Amend. 7, guarantying the right to trial by jury in controversies exceeding $20 in value, and Rev. St. U. S. § 566 [U. S. Comp. St. 1901, p. 461], declaring that a trial of issues of fact in the District Courts in all cases, except cases in equity and cases of admiralty and maritime jurisdiction and except as otherwise provided in proceedings in bankruptcy, shall be by jury, defendants in a proceed-

ing by scire facias on a forfeited recognizance in a federal District Court in which the United States sought to recover $1,000 were entitled to a trial by jury of issues of fact tendered unless such right was waived.

[Ed. Notes.—Right to trial by jury in federal courts, see notes to O'Connell v. Reed, 5 C. C. A. 603; Vany v. Peirce, 26 C. C. A. 528.]

9. BAIL—SCIRE FACIAS—WRIT—ALLEGATIONS—SUFFICIENCY.

Where a scire facias on a forfeited recognizance alleged that W., as principal, and defendants, as sureties, entered into a recognizance on a given date before the trial court, binding themselves to pay the United States $1,000 if the principal should fail to appear in that court at a term and time specified to answer a charge of the United States exhibited against him, and that he failed to so appear and after such failure a default and forfeiture were duly adjudged by the court, it was not demurrable for failure to allege the nature of the charge against W., that the same was pending against him at the time the recognizance was forfeited, and that the recognizance was made a matter of record, etc.

10. SAME—BREACH OF RECOGNIZANCE.

Act Cong. Nov. 3, 1903 (28 St. 5, c. 10), declared that the state of · South Dakota should constitute one judicial district only, but for the purpose of holding terms of the District Court the district was divided into four divisions, and required court to be held at Aberdeen for the Northern Division, at Sioux Falls for the Southern, at Pierre for the Central, and at Deadwood for the Western, Division. Section 3 declared that the terms of the Circuit and District Courts of the United States for the state of South Dakota should be held at Sioux Falls on the first Tuesday in April and the third Tuesday in October, at Aberdeen on the first Tuesday of May and the third Tuesday of November. *Held,* that such court was the same court, whether held in one division or the other, so that where a recognizance bound accused to appear at the next term of the court to be held at Sioux Falls on Tuesday, October 18, 1904, and from time to time and term to term, etc., thereafter, and he was subsequently ordered to appear for trial at the November, 1904, term, to be held in Aberdeen, his failure there to appear constituted a breach of his recognizance.

11. SAME—PLEADING—VARIANCE—MATERIALITY.

In scire facias on a forfeited recognizance, the writ declared that defendants appeared before United States District Court and entered into the recognizance in question on July 6, 1904, and that the recognizance was conditioned that the principal should appear before "our District Court of the United States, at the next term of United States District Court to be held in the federal building at Sioux Falls, South Dakota, to wit, on Tuesday, October 18, 1904." The recognizance offered in evidence bore date as having been approved and filed July 6, 1904, but the notary before whom the sureties acknowledged the same certified that they appeared before him on "July 6, 1894," and the recognizance was conditioned that the said principal should be and appear at the next term of court of United States, to be holden at Sioux Falls, S. D., in and for the judicial district of South Dakota. *Held,* that such variances were not material, the first being a mere clerical error of the notary, and the second being insufficient to create any uncertainty as to the court in which the principal was required to appear.

In Error to the District Court of the United States for the District of South Dakota.

Joe Kirby and S. H. Wright, for plaintiffs in error.

· William G. Porter (James D. Elliott, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a writ of scire facias issued by the District Court of the United States for the District of South Dakota against Frank Waugh, as principal, W. C. Hollister and Thomas Scanlan, as sureties, upon a forfeited recognizance for $1,000 given to secure Waugh's appearance at the next term of that court to answer a criminal charge preferred against him, consisting of the larceny of two mares committed on the Rosebud Indian reservation. Waugh not being found, service of the writ was made against the sureties only, and they are now the only parties defendant.

The record does not disclose that Waugh was an Indian or that he stole the property of an Indian. He was, therefore, not subject to the provisions of section 9 of the act of March 3, 1885 (chapter 341, 23 Stat. 362), and was not indicted under that act. By Act Feb. 2, 1903, c. 351, 32 Stat. 793 [U S. Comp. St. Supp. 1905, p. 719], under which he was indicted, Congress undertook to confer jurisdiction upon the Circuit and District Courts of the District of South Dakota to try cases, among others, of larceny committed by any person upon any Indian reservation of that state. It is urged at the outset that Congress did not possess power to confer such jurisdiction upon the national courts, certainly without the consent of the state in which the reservation affected might be located.

Upon the adoption of the general policy disclosed by the act of February 8, 1887 (chapter 119, 24 Stat. 389), looking towards the cessation of tribal relations, division of the lands in severalty among the Indians, establishment of homes for them, and bestowal of the rights of citizenship upon them, a serious and important trust devolved upon the United States. This has been expressed by the Supreme Court in various ways, such as "these Indians are yet the wards of the nation, in a condition of pupilage or dependency, and have not been discharged from that condition. * * * It is a part of the national policy by which the Indians are to be maintained as well as prepared for assuming the habits of civilized life, and ultimately the privileges of citizenship." U. S. v. Rickert, 188 U. S. 432, 437, 23 Sup. Ct. 478, 480, 47 L. Ed. 532. "The recognized relation between the government and the Indians is that of a superior and an inferior, whereby the latter is placed under the care and protection of the former." Matter of Heff, 197 U. S. 488, 498, 25 Sup. Ct. 506, 507, 49 L. Ed. 848. The obligation cast upon the legislative and executive departments of the government to administer upon and guard the tribal property and determine when and on what conditions it should be vested absolutely in the individual Indian, as declared in Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 Sup. Ct. 115, 47 L. Ed. 183; Lone Wolf v. Hitchcock, 187 U. S. 553, 23 Sup. Ct. 216, 47 L. Ed. 299; Stephens v. Cherokee Nation, 174 U. S. 445, 19 Sup. Ct. 722, 43 L. Ed. 1041, discloses the appropriateness and wisdom of the policy of reserving to the United States courts criminal jurisdiction over certain offenses specified in the act of February 2, 1903. It was a reasonable thing, in line with the paternal duty imposed upon the nation, to make a demonstration to its wards in the vicinity of their abode of the benefits and advantages of a well-governed community.

If it was the duty of the nation to care for them as its wards and develop them into a condition of civilized life and merited citizenship, power to adopt all reasonable methods to that end, of course, existed. As said in United States v. Rickert, supra, and U. S. v. Kagama, 118 U. S. 375, 384, 6 Sup. Ct. 1109, 30 L. Ed. 228, from the considerations just alluded to "there arises the duty of protection, and with it the power."

The assumption of jurisdiction found in the act of February 2, 1903, comes fairly within the power of Congress as an instrumentality employed in the discharge of the national duty toward the Indians. Utah & N. Ry. v. Fisher, 116 U. S. 28, 6 Sup. Ct. 246, 29 L. Ed. 542. In our opinion, too, that jurisdiction was assumed with the assent of the people of South Dakota. The last section of the last-mentioned act recites that it was passed pursuant to a cession of jurisdiction by that state. The state, by the act of February 14, 1901 (Sess. Laws S. D. 1901, p. 132, c. 106), relinquished to the United States exclusive jurisdiction to arrest, prosecute, and punish all persons who might commit upon any Indian reservation in the state for any offenses which might be denounced by Congress. This cannot be said to be an arbitrary relinquishment of power inconsistent with the sovereignty of a state. It was made at a time when, as a result of the adoption of the policy announced in the act of February 8, 1887, large bodies of land embraced in the several reservations within the confines of South Dakota, permanent improvements erected thereon, and stock and personal property derived from the government and used in connection therewith became exempt from taxation for support of the state government (U. S. v. Rickert, supra), and at a time when tribal reservations under the act of 1887 were fast being disintegrated by allotments of lands in severalty to Indians and the opening of the balance to general settlement. The act of February 2, 1903, ex vi termini, became inoperative so far as any particular reservation was concerned upon the extinguishment of the Indian title. Bates v. Clark, 95 U. S. 204, 208, 24 L. Ed. 471, Buster v. Wright, 135 Fed. 947, 952, 68 C. C. A. 505, and common knowledge tells us that the Indian title is being rapidly extinguished, and that we may reasonably expect in the near future such progress in that direction as to leave few, if any, Indian reservations in existence. Accordingly the ceding of jurisdiction by the state of South Dakota may well be considered a mere temporary expedient, relieving the state for the time being from burdens which, for want of power to impose taxes upon property of Indians, had become heavy and difficult to bear, and as a permissible and worthy co-operation with the national government in the discharge of its duties and obligations towards the Indians. For the reasons just suggested, the relinquishment of limited jurisdiction such as is involved in this case comes fairly within the general legislative power of the state.

Instances of relinquishment and acceptance of criminal jurisdiction by state Legislatures and the national Congress, respectively, over forts, arsenals, public buildings, and other property of the United States situated within the states, are common, and their legality has

never, so far as we know, been questioned. Obvious considerations of public policy and convenience which have prompted such legislation apply, in our opinion, with equal force to the relinquishment and acceptance of jurisdiction temporarily over Indian reservations. The method of relinquishing such jurisdiction by act of the Legislature of a state and the acceptance thereof by the Congress of the United States, has been without objection recognized as effectual and lawful. Peters v. Malin (C. C.) 111 Fed. 244; In re Lelah-Puc-Ka-Chee (D. C.) 98 Fed. 429. But, if it be true that such legislation by a state needs authorization by the people, we are of opinion that the Legislature of South Dakota was by fair intendment of language employed, authorized by the Constitution of the state to relinquish jurisdiction to the United States, even of a more permanent character than what was done by the act of February 2, 1903.

Pursuant to the requirements of the enabling act of Congress, the people of South Dakota in the adoption of their Constitution in 1889 agreed, among other things, by article 26, that all Indian lands should remain under the absolute jurisdiction and control of Congress until the Indian title thereto should be extinguished by the United States, and that jurisdiction should be ceded to the United States over the military reservations of Ft. Mead, Ft. Randall, and Ft. Sully. And as part of that article it was ordained that the same should be irrevocable without the consent of the United States, and also the people of South Dakota "expressed by their legislative assembly." The provisions of article 22 of the Constitution made them also irrevocable without like consent of the people "expressed by their legislative assembly." These provisions of the Constitution received a practical construction in the Political Code adopted by the Legislature soon after the organization of the state government, in which the sovereignty and jurisdiction of the state are made subject to "such limitations and qualifications of jurisdiction as have been or may hereafter be ceded by law to the United States," and in which jurisdiction is ceded over other lands acquired by the United States for public buildings and public works, as long as such lands shall remain the property of the United States. Revised Code of South Dakota, 1903, Political Code, p. 3. We are of opinion that tested by the methods prescribed by the Constitution for securing the consent of the people in kindred matters above referred to their consent to the cession of criminal jurisdiction over Indian reservations is sufficiently expressed by the act of their Legislature in question.

Objection is made to that act because it adopts the punishment for the crime of larceny as provided by the state of South Dakota. This kind of legislation first found expression in Act March 3, 1825 (chapter 65, 4 Stat. 115), and subsequently in Act July 7, 1898, c. 576, 30 Stat. 717 [U. S. Comp. St. 1901, p. 3652]. In U. S. v. Paul, 6 Pet. 141, 8 L. Ed. 348, the Supreme Court had under consideration the third section of the act of 1825, which reads:

"That if any offense shall be committed in any of the places aforesaid [referring to forts and other public places the sites of which had been ceded to the United States] the punishment of which offense is not specially provided for by any law of the United States, such offense shall, upon a con-

viction in any court of the United States having cognizance thereof, be liable to and receive the same punishment as the laws of the state in which such fort, etc., is situated, provide for the like offenses when committed within the body of any county of such state."

That court, by Chief Justice Marshall, held that that section adopted the punishment provided for by state statutes in effect at the time when the act of Congress was passed, and must be so limited. That decision has been accepted as the law from that day to this. The act of February 2, 1903, supra, is not inconsistent with the rule so announced. It employs the present tense in referring to the punishments provided by the laws of South Dakota, which it adopts. The language is:

"Shall be subject to the same penalties and punishments as are all other persons convicted of either of said crimes under the laws of the state of South Dakota."

It does not purport to delegate to the state of South Dakota authority at any time in the future to fix, ad libitum, the punishment of federal offenses. This it could not do. Congress seems to have been willing to adopt the punishment as fixed in 1903 by the laws of South Dakota for the crime of larceny, and such adoption was, in our opinion, competent legislation. U. S. v. Paul, supra; U. S. v. Barnaby (C. C.) 51 Fed. 20; U. S. v. Barney, 5 Blatchf. 294, Fed. Cas. No. 14,524.

A writ of scire facias on a forfeited recognizance is a judicial writ founded upon and to be proved by the record of the court taking it. Decisions of state courts are numerous and conflicting as to whether it is the commencement of a civil action or a continuation of some other original proceeding, whether it performs the function of a writ only or those of a writ and declaration, and whether the defendant may plead to the writ or whether the plea goes to the record on which it is founded. But, as the decisions of the Supreme Court of the United States are clear and controlling on these questions, the long list of state cases to which our attention is called need not be considered for the purpose of extracting a rule for our government. In Winder v. Caldwell, 14 How. 434, 14 L. Ed. 487, it is said:

"A scire facias is a judicial writ used to enforce the execution of some matter of record on which it is usually founded; but though a judicial writ, or writ of execution, it is so far an original that the defendant may plead to it. As it discloses the facts on which it is founded, and requires an answer from the defendant, it is in the nature of a declaration, and the plea is properly to the writ."

In United States v. Payne, 147 U. S. 687, 13 Sup. Ct. 442, 37 L. Ed. 332, it is said:

"While a scire facias to revive a judgment is merely a continuation of the original suit, a scire facias upon a recognizance * * * is as much an original cause as an action of debt upon a recognizance, or a bill in equity to annul a patent"—citing Winder v. Caldwell and Stone v. U. S., 2 Wall 525, 17 L. Ed. 765.

In Hunt v. United States, 166 U. S. 424, 17 Sup. Ct. 609, 41 L. Ed. 1063, it is held that notwithstanding the fact that the writ of scire

facias upon a recognizance to answer to a criminal charge is a case "arising under the criminal laws," within the meaning of the act of March 3, 1891 (chapter 517, 26 Stat. 828), relating to the appellate jurisdiction of the Circuit Courts of Appeal, it is nevertheless a civil action. In Browne v. Chavez, 181 U. S. 68, 21 Sup. Ct. 514, 45 L. Ed. 752, it is held that a scire facias is an "action" within the meaning of statutes of limitations, barring "all actions founded upon any judgment," and it is there reiterated that the "averments in the writ are equivalent to a petition or declaration." See, also, to the same effect, Owens v. Henry, 161 U. S. 642, 16 Sup. Ct. 693, 40 L. Ed. 837. The Supreme Court of Michigan in the case of McRoberts v. Lyon, 79 Mich. 33, 44 N. W. 163, relying upon and citing in support Winder v. Caldwell, announces the doctrine that the writ stands for the declaration at common law and presents the plaintiff's whole case.

From the principles announced in the foregoing authorities certain conclusions inevitably follow: First. The record upon which the writ issues is not a part of the declaration. It is the evidence upon which plaintiff must rely to prove the case, and the legal sufficiency of the declaration must be determined, as in ordinary cases of pleading, from a consideration of its averments. Second. Under the provisions of the seventh amendment to the Constitution, guarantying the right of trial by jury in controversies exceeding in value the sum of $20, and the provisions of section 566 of the Revised Statutes [U. S. Comp. St. 1901, p. 461], that "a trial of issues of fact in the District Courts in all causes except cases in equity and cases of admiralty and maritime jurisdiction and except as otherwise provided in proceedings in bankruptcy, shall be by jury," the defendants were entitled to a trial by jury if any issue of fact was tendered by them, unless they duly waived such right.

The defendants demurred to the declaration on the ground that it failed to state facts sufficient to constitute a cause of action. It stated, in substance, that Waugh, as principal, and the defendants, as sureties, entered into a recognizance on a given date before the court below, binding themselves to pay to the United States $1,000 if the principal should fail to appear in that court at a term and time specified "to answer a charge of the United States exhibited against him;" that he failed to so appear, and that after such failure a default and forfeiture were duly adjudged by the court. Nothing is here lacking to show that defendants incurred a liability to the United States under the strict terms of their contract as pleaded. It is true the ultimate facts on which the right of recovery is predicated are alone pleaded. There is no waste of words in narration of evidential facts. In these respects the declaration conforms strictly to a very necessary and desirable rule of pleading. It may be that the pleader should, for defendants' information, have been required to state some extraneous facts disclosing the nature of the charge against Waugh—how he became subject to the jurisdiction of the court, whether the charge was pending against him at the time of the forfeiture of the recognizance, when the recognizance was filed in the court below, and other such evidential facts—but whether so or not, the absence of such facts

from the declaration does not, in our opinion, render it obnoxious to a demurrer. If the information suggested had been necessary for defendants' use in preparing for a trial, it doubtless could have been obtained by some special demurrer or motion to make the declaration definite and certain, or motion for a bill of particulars.

There is no doubt of the proposition contended for by defendants' counsel that there must have been some criminal charge exhibited against Waugh; that the same must have been pending against him at the time of the forfeiture of the recognizance; that the recognizance must have been made matter of record, etc.; but all such matters are evidential in their character. The record when offered to prove the case must disclose them or the case fails; but to hold that any of them must be averred in detail in the declaration is to hold that plaintiff must plead his evidence, instead of the ultimate facts on which recovery is based. We think the declaration was sufficient as against the general demurrer.

The defendants' answer contains a denial that they made, executed, or delivered the bail bond or undertaking described in the scire facias, and at the opening of the case defendants objected to its trial by the court without a jury. This objection being overruled, defendants properly saved their exception. We think, in consideration of what has already been said concerning the nature of the proceeding by scire. facias, and especially in the light of the observation of Mr. Justice Brown in United States v. Payne, supra, to the effect that scire facias upon a recognizance is as much an original cause as an action of debt upon a recognizance, that the learned trial judge erred in overruling defendants' objection to a trial without a jury. An issue of fact was properly tendered by them. In the case of Hunt v. United States, supra, which was a scire facias on a forfeited recognizance, the Supreme Court deemed the question of a right of trial by jury so pertinent as to specially call attention to the fact that a jury had been waived in writing. It may be that the denial interposed was intended to relate to some legal feature of the record which, when offered, would present only a question of law, but we are not sufficiently sure of this from the record before us to sustain the position taken by the learned trial judge on the pleadings as they stood at the time the objection was made.

It is next contended that there was no breach of the recognizance stated in the declaration. The recognizance required Waugh to appear before the court "at the next term * * * to be held in the court room in the federal building at Sioux Falls, South Dakota, to wit, on Tuesday, October 18, 1904, and from time to time at said term and all subsequent terms of said court when required by the order of said court * * * to answer," etc. It is averred that on October 18, 1904, the case was duly called for trial, both sides appearing, when it was ordered by the court to be set down for trial at the November term, 1904, of the court to be held at Aberdeen, S. D., and that Waugh appear at that time and place for trial. It is averred that Waugh failed to appear at Aberdeen according to the order made, and that as a result thereof the recognizance was forfeited. The con-

tention is that the failure to appear at Aberdeen constituted no breach of defendants' undertaking. Is this correct? By the provisions of the act of November 3, 1903 (chapter 10, 28 Stat. 5), the state of South Dakota, which before that time had constituted one judicial district, with the United States courts held only at the capital (Act Feb. 22, 1889, c. 180, 25 Stat. 676, 682), was declared to constitute one judicial district only, but "for the purpose of holding terms of the District Court" the district was divided into four divisions, the Northern, Southern, Central, and Western. The act required the courts to be held at Aberdeen for the Northern Division, at Sioux Falls for the Southern, at Pierre for the Central, and at Deadwood for the Western, Division. By section 3, Act Nov. 3, 1903, c. 10, 28 Stat. 5, it was provided:

"That the terms of the Circuit and District Courts of the United States in and for the state of South Dakota shall be as follows: At Sioux Falls on the first Tuesday in April and the third Tuesday in October * * * at Aberdeen on the first Tuesday of May and the third Tuesday of November."

No other legislation affecting the terms or sessions or character of the United States courts in South Dakota has been called to our attention or discovered by us in our investigation.

From the foregoing statutes it appears that South Dakota constituted one judicial district only, and that the sessions of the courts for that district were not all held at one place, but at four different places. Whether at Aberdeen, Sioux Falls, Pierre, or Deadwood, the court was one and the same, and the times and places fixed by law for different sessions in any place were successive terms of one and the same court.

Accordingly we are of opinion that the recognizance in question binding Waugh to appear at the next term of court to be held at Sioux Falls and from time to time at said term, and all subsequent terms of said court whenever ordered so to do, bound him to appear, not only at Sioux Falls during the term held there, but at Aberdeen during any subsequent term as and when ordered by the court so to do, and that Waugh's failure to appear pursuant to the order of the court made upon him at Sioux Falls constituted a breach of the condition of the recognizance for which the defendants, as sureties, are liable.

Certain variances between the pleadings and proof are claimed by defendants to be fatal. The declaration declares that the defendants appeared before the United States District Court and entered into the recognizance in question on July 6, 1904. The recognizance offered in evidence bears on its face the approval of Judge Carland, the judge of the United States District Court for the District of South Dakota, and the filing mark as follows: "Filed July 6th, 1904, Oliver S. Pendar, Clerk." For some unexplained reason, the sureties went before a notary public of the state of South Dakota and acknowledged the execution by them of the instrument bearing their signatures. In certifying to that fact the notary says they appeared before him July 6, 1894. The declaration declares that the condition of the recognizance was that Waugh should appear before "*our District Court of*

*the United States * * * at the next term of United States District Court to be held in the courtroom in the federal building at Sioux Falls, South Dakota,* to wit, on Tuesday, October 18, 1904." In proof of that allegation, the recognizance, approved and filed, as already stated, was offered in evidence, and the condition thereof reads as follows: "If the said Frank Waugh * * * shall be and appear at the next term *of court of the United States to be holden at Sioux Falls, South Dakota,* in and for the Judicial District of South Dakota, * * *" then the obligation shall be void. These were immaterial variations. The first was the result of an obvious clerical error made by a notary public who had no duty to perform in the matter of approving the recognizance. The second leaves no uncertainty whatsoever as to when or before what court the principal was required to appear, or that he was required to appear before the very court described in the declaration.

The objections to the evidence because of variations were without merit, and were properly overruled. We have disposed of this case without adverting to some of the assignments of error found in the record, but the conclusions reached on the main questions discussed involve all minor ones found in the assignments of error, and render unnecessary a particular reference to them.

For the error committed by the trial court in denying to defendants a jury trial, and for that reason alone, the judgment is reversed, and the cause remanded for a new trial.